UNITED STATES DISTRICT COURT
NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLENDA JEFFERY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05 C 6458 |
| | ) | |
| v. | ) | Judge John W. Darrah |
| | ) | |
| KRAFT FOODS GLOBAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Glenda Jeffery, filed suit, *pro se*, against Defendant, Kraft Foods Global, Inc., alleging employment discrimination in violation of the American with Disabilities Act. Presently pending before the Court is Defendant's Motion to Dismiss with Prejudice Pursuant to 28 U.S.C. § 1915(e)(2)(A). Defendant alleges that later admissions in Plaintiff's sworn deposition testimony are inconsistent with statements in her *in forma pauperis* ("IFP") application filed in support of her Motion to Appoint Counsel; and those portions of the IFP application were demonstrably false when filed on November 10, 2005. Plaintiff's application and motion were granted on February 14, 2006.

Plaintiff filed an IFP application in support of her Motion for Appointment of Counsel, acknowledging she was answering the questions "to proceed without full prepayment of fees" and "in support of my motion for appointment of counsel . . . under penalty of perjury." (Emphasis in original).

Question No. 2(a) of the IFP application asked:

Are you currently employed?   Yes    No
Monthly salary or wages:_____
Name and address of employer:_____

     a.     If the answer is "No":
           Date of last employment:_____
           Monthly salary or wages: _____
           Name and address of last employer:_____

Plaintiff responded to Question No. 2(a) that she was not currently employed. She stated that the date of her last employment was November 22, 2004, that her monthly earnings were $1,994.00, and that her last employer was "Nabisco Kraft."

Question No. 2(b) of the IFP application asked, in pertinent part:

     b.     Are you married?     Yes     No
           Spouse's monthly salary or wages:_____
           Name and address of employer:_____

Plaintiff responded to Question No. 2(b) that she was not married.

Question No. 3 of the IFP asked, in relevant part:

> Apart from your income stated in response to Question 2, in the past twelve months have you or anyone else living at the same address received more than $200 from any of the following sources?
>
>      a.     Salary or wages     Yes   No
>      Amount_____ Received by_____
>
>      b.     Business, profession or other self-employment     Yes   No
>      Amount_____ Received by_____
>
>                      * * *
>
>      f.     Any other sources (state source:_____)     Yes   No
>      Amount_____ Received by_____

For subpart (a), Plaintiff responded that she received $250 - $300 weekly from her brother-in-law, James Morgan. For subparts (b) and (f), Plaintiff checked "No."

2

Question No. 4 of the IFP asked, in relevant part:

> Do you or anyone else living at the same address have more than $200 in cash or checking or savings accounts?
> Yes   No   Total Amount:_____

Plaintiff checked "No" for Question No. 4.

Question No. 6 of the IFP asked, in relevant part:

> Do you or anyone else living at the same address own any real estate (houses, apartments, condominiums, cooperatives, two-flats, three-flats, etc.)?   Yes   No

Plaintiff checked "No" for Question No. 6.

Plaintiff signed her IFP application on November 10, 2005. The following appeared directly above her signature:

> I declare under penalty of perjury that the above information is true and correct. I understand that pursuant to 28 U.S.C. § 1915(a)(2)(A), the court shall dismiss this case at any time if the court determines that my allegation of poverty is untrue.

On November 15, 2006, Defendant deposed Plaintiff. During her deposition, Plaintiff was asked whether she had a job in the last six to eight months. Plaintiff wanted clarification on the word "job." When asked if she potentially earned money, Plaintiff disclosed that she worked at a business that produced balloon art. Plaintiff disclosed that she initially started the business but sold it to her husband, Calvert Pitchford, when she was terminated from her job with Defendant. When asked if she was currently employed by the balloon company, Plaintiff responded that she "donated" her time about two or three times per week. She was "sometimes" paid for her services but "pretty much" was compensated by having her bills paid or being given food. Plaintiff stated her compensation came from Pitchford and could not recall whether she

was ever compensated from someone else.[1] While working at the balloon business, she stated she earned "maybe" $3,000 to $5,000 in 2006. When asked if she made similar amounts in 2005, she responded, "Maybe the same. I don't know."

Regarding her relationship to Pitchford, Plaintiff explained they married in March of 2004. Plaintiff had been living with Pitchford since 1998 or 1999. Plaintiff, Pitchford, and Plaintiff's son and daughter moved into an apartment in 2001 or 2002. Plaintiff and Pitchford separated around July 2005. She moved out and went to live with her sister and brother-in-law, Martha and James Morgan. Plaintiff was living with her sister at the time she filled out the IFP application but was still married to Pitchford.

While living with her sister, Plaintiff "occasionally" contributed rent, using money her husband gave her for working at the balloon business. She also received money from her daughter for "regularly" babysitting her grandson. Besides earning money at the balloon business and babysitting, Plaintiff performed day-to-day errands and favors. During her deposition, Plaintiff stated she "probably" received more than $200 from family and friends in 2005 that she was not expected to pay back.[2]

During discovery, Plaintiff produced five bank statements dated between May 2003 and February 2006 pertaining to a checking account Plaintiff shared with her son. One statement revealed a balance of $388.84 on November 23, 2005, and a balance of $475.54 on

---

[1] Plaintiff could not recall the answers to many questions during her deposition. For example, she could not recall whether she first named the company Feels Goods Etc. or Busy Balloons or what the current name was. She could not recall when she started up the balloon company nor could she recall whether Pitchford still owned the company. Plaintiff stated she owed money to people, but she could not recall how much she owed or to how many people – "maybe somewhere in between" five and twenty people. Regarding traffic tickets, Plaintiff could not recall how many she had. Plaintiff could not recall the amount she had recently paid in fines for being arrested for driving without a license nor could she recall how she received the money. She stated she may have earned it, may have been given it, or may have received it through a loan.

[2] In her response to Defendant's interrogatory request for information concerning all sources of money or living expenses, Plaintiff indicated that she has received approximately $15,000 - $20,000 in "monetary and other support from my family and friends."

December 26, 2005. During that period, over $4,500 was withdrawn from and deposited into the account. In her deposition, Plaintiff explained that "all the money" was deposited in that account; and she paid the bills on a monthly basis. Each month, Plaintiff wrote a $750 rent check for the balloon company and a $960 rent check for the apartment she lived in with Pitchford and her children.

Sometime during May or June of 2006, Plaintiff purchased a home with her son. Plaintiff is listed as the purchaser and owner of the home. Although her name appears on the quitclaim deed, she testified that her son purchased the home and that she contributed no funds to the purchase.[3]

In her deposition, Plaintiff was asked about her responses to the IFP application questions. Plaintiff explained that she responded "No" to No. 2(b), whether she was married, because she was separated from her husband at the time. Plaintiff admitted that she did not list any money she received from working at the balloon business, babysitting, or from Pitchford under No. 3(f), which asked if she received more than $200 from any source in the past twelve months. Plaintiff also explained that she responded "No" to No. 4, asking if she had a checking account containing more than $200, because she "probably didn't know what the balance was at that time."

In response to Defendant's motion to dismiss with prejudice, Plaintiff claims that any discrepancies between her IFP application and her deposition can "easily be explained as honest mistakes." Plaintiff emphasizes she is not a lawyer, having never graduated high school. In response to No. 2(a), Plaintiff explains she was not regularly employed and was compensated

---

[3]This property and home was assessed in 2006 by the Cook County Assessor's office at an estimated market value of $91,831. The property appears to be held clear of any mortgage.

5

only for performing chores and odd jobs to help her family. In response to No. 2(b), Plaintiff explains at the time she filled out her application, she was not living with her husband; and he gave her little monetary support. In response to No. 3, Plaintiff emphasizes she disclosed her earnings from her brother-in-law in No. 2(a). In response to No. 4, Plaintiff explains she was a co-owner of the checking account and did not use it for personal use but only to pay family expenses. In response to Question No. 6, Plaintiff explains she did not own interest in any real estate at the time she filled out her IFP application. She was also not aware of a duty to update the application.

Section 1915(e)(2)(A) provides that "the court *shall* dismiss the case at any time" if the allegation of poverty by a plaintiff is found to be false. 28 U.S.C. § 1915(e)(2)(A) (emphasis added). Not withstanding Plaintiff's failure to amend her answer to question No. 6 after becoming an owner of real estate, she still falsely stated her financial and marital status in question Nos. 2, 3 and 4. The court must dismiss a pending suit under these circumstances. *See Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305, 306 (7th Cir. 2002) (*Thomas*).

Whether this dismissal is with or without prejudice is left to the discretion of the court. *See Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) (*Mathis*). While attaching prejudice is not automatic, the purpose of the IFP application is to encourage forthrightness and discourage fraud on the court. Plaintiff was anything but forthright in her answers on the IFP form. She was asked straightforward questions that she was expected to answer honestly under penalty of perjury. Instead, she answered in a way favorable to her attempt to file this action without cost and obtain free legal services. But in so doing, she materially misrepresented her financial status.

Plaintiff answered Question No. 2 that she was not employed and provided no monthly salary or wages. However, Plaintiff testified she received between $3,000 and $5,000 for working at the balloon company. Even if Plaintiff did not consider herself an employee of the balloon company because she did not work fixed hours and did not receive a regular paycheck, she still failed to disclose this amount under Question No. 3(f), which inquired as to whether she received more than $200 in the last twelve months *from any source*. In answering "No" to No. 3(f), Plaintiff also did not disclose her compensation for regularly babysitting and other "odd jobs." Nor did she indicate she received an unknown amount of loans from between five and twenty people.

Plaintiff emphasizes she disclosed her $250 to $300 weekly wage from her brother-in-law under No. 3(a). She claims this answer explains her answer of "No" to No. 3(f). However, Plaintiff made clear that she received money for working at the balloon company from her husband and does not recall getting paid by anyone else. Even if her weekly wage disclosed under No. 3(a) covered her babysitting duties and other odd jobs, those earnings do not account for her earnings working for the balloon company.

Additionally, Plaintiff responded to Question No. 2(b) that she was not married. This answer is false. Although they were separated and not living together, Plaintiff was still married to Pitchford. No. 2(b) inquires about the spouse's salary to help determine the applicant's financial status. By indicating she was not married and by not specifying her husband's salary, Plaintiff misled the court into believing she was not being supported by any husband. To the contrary, Pitchford was supporting Plaintiff by paying her cash, covering her bills, and providing her with food. The fact that she was not living with her husband during this time is immaterial.

In No. 4, Plaintiff answered that she did not have any cash or checking or savings accounts exceeding $200. This answer is false. Plaintiff co-owned a checking account with her son. She had the authority to withdraw money from that account. Each month, Plaintiff wrote two rent checks, totaling over $1,700. She had been making these monthly payments for at least three years. Also, Plaintiff's bank statement covering the period between November 23, 2005 and December 26, 2005 revealed a balance exceeding $200 and indicated more than $4,500 had been withdrawn and deposited during that time. Plaintiff's assertion that she does not have a checking account having more than $200 is completely false. Plaintiff notes that she only used the checking account to pay bills. In fact, Plaintiff stresses throughout her deposition that she only received money for that purpose. However, nowhere does the IFP application instruct an applicant to disclose only those funds used for personal spending once bills have been paid.

The IFP application clearly sets forth the requirement that information be true and correct (which includes complete), as well as the penalty for failure to do so. The fact that Plaintiff is not an attorney nor has completed high school does not excuse her deception. To the contrary, she once owned her own business while working a second job (for the Defendant). Claiming she made "honest mistakes" only after being deposed does not negate the consequences for her misrepresentations. *See Mathis*, 133 F.3d at 547-48 (affirming dismissal with prejudice although plaintiff averred that errors in IFP application were inadvertent errors); *Thomas*, 288 F.3d at 306-07 ("Dismissal with prejudice may have been the only feasible sanction . . . Dismissal without prejudice would have been no sanction at all . . . ."). Based on the above, dismissal of Plaintiff's Complaint is with prejudice.

For the foregoing reasons, Kraft Foods' Motion to Dismiss with Prejudice is granted. Jeffery's Complaint is dismissed with prejudice.

Dated: February 22, 2007

JOHN W. DARRAH
United States District Court Judge